UNITED STATES of America,
Plaintiff-Appellee,

v.

A SINGLE FAMILY RESIDENCE AND REAL PROPERTY LOCATED AT 900 RIO VISTA BLVD., FT. LAUDER-DALE, Defendant,

Heidi of South Florida, Inc.,
Claimant-Appellant,

Broward County, Intervenor.

IC No. 85–5958.

United States Court of Appeals,
Eleventh Circuit.

Nov. 3, 1986.

George E. Becker, Chicago, Ill., for claimant-appellant.

Alexander Cocalis, Broward County Gen. Counsel's Office, Fort Lauderdale, Fla., for intervenor Broward County.

Leon B. Kellner, U.S. Atty., Alan I. Mishael, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN *, Senior District Judge.

JOHNSON, Circuit Judge:

Appellant, Heidi of South Florida, Inc. ("Heidi"), appeals the denial of its claim to a certain residence and real property located at 900 Rio Vista Blvd., Ft. Lauderdale, Florida ("Property"), and the district court's judgment finding that the Property was forfeited pursuant to 21 U.S.C.A. § 881(a) (1981). We affirm. Because we find this appeal patently frivolous, we also impose sanctions against Heidi in the amount of double costs and reasonable attorney's fees incurred by appellee in connection with this appeal, and remand for a determination of whether sanctions should be imposed against Heidi's counsel as well.

## I. BACKGROUND

Heidi was organized under the laws of Florida on August 27, 1979, with Heidi Hartline listed of record as president, director and sole subscriber for shares. Hartline at that time was the girlfriend of suspected drug trafficker Jonathan Scot Baldwin. The day after its incorporation,

---

* Honorable Walter D. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

Heidi purchased the Property. Hartline signed the closing documents on behalf of Heidi. Participation in this closing apparently is the only act Hartline ever performed on behalf of Heidi.

On November 29, 1982, Baldwin was arrested for drug trafficking. He subsequently pleaded guilty to the conspiracy count of the indictment against him. One of the overt acts listed in that count was the delivery of $75,000.00 to Southport Realty Inc. for the purchase of the Property. Baldwin's conviction was affirmed by this Court on appeal. *United States v. Stitzer*, 785 F.2d 1506 (11th Cir.1986).

On September 18, 1984, a warrant for seizure of the Property was issued pursuant to 21 U.S.C.A. § 881(a)(6) and (b), which provides for seizure and forfeiture of property that constitutes "proceeds traceable to" an illegal drug exchange upon process issued in accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims. The Government filed its forfeiture complaint October 10, 1984, and Heidi filed a verified claim and motion for return of the Property on October 18, 1984. The claim was signed by Baldwin as agent for Heidi.

On May 16, 1985, the district court held a probable cause hearing at which it found that the Government had established probable cause to believe that the Property was proceeds traceable to Baldwin's drug sales. Based on this holding, the district court denied Heidi's motion for return of the Property. On September 23, 1985, the district court held a further hearing at which Heidi was given the opportunity to establish the affirmative defense of innocent ownership. *See id.* § 881(a)(6). On September 30, 1985, the district court entered final judgment for the United States, finding that Heidi had failed to establish the

defense of innocent ownership and ordering that the Property be sold. Heidi's motion for a new trial was denied and this appeal followed.

## II. DISCUSSION

Heidi challenges both the district court's finding of probable cause for issuance of the warrant and its finding that Heidi failed to establish the affirmative defense of innocent ownership. It also challenges the constitutionality of 21 U.S.C.A. § 881(a)(6) on vagueness and procedural due process grounds. All of these arguments are patently without merit.

### A. Probable Cause

Under Section 881(a)(6), the United States must establish probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance. *United States v. $4,255,625.39*, 762 F.2d 895, 903 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).[1] "Probable cause" is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion." *United States v. $364,960.00*, 661 F.2d 319, 323 (5th Cir. Unit B 1981) (quoting *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980)). The existence of probable cause is judged "not with clinical detachment, but with a common sense view to the realities of normal life." *$4,255,625.39*, 762 F.2d at 904, (quoting *Wilson v. Attaway*, 757 F.2d 1227, *reh'g denied*, 764 F.2d 1411 (11th Cir.1985)).

 Heidi's main argument in support of its contention that the United States failed to establish probable cause for seizure of the Property is the fact Heidi holds legal title to the Property while the only

---

**1.** The "substantial connection" requirement is not found in the statute, but rather in its legislative history, which indicates that, because of the penal nature of forfeiture statutes, "it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent." *$4,225,-625.39*, 762 F.2d at 902 n. 14 (quoting Joint Explanatory Statement of Titles II and III of the Psychotropic Substances Act of 1978, Pub.L. No. 95–633, 92 Stat. 3768 (codified in scattered Sections of 18 and 21 U.S. C.), *reprinted in* 1978 U.S.Code Cong. & Ad. News 9496, 9518, 9522).

evidence of drug trafficking in the record deals with Baldwin's illegal activities. This argument is totally without merit. Under Section 881(a)(6), the government is not required to show that property is owned by a drug trafficker, but rather that it has a substantial connection to a drug transaction. *See $4,255,625.39*, 762 F.2d at 905 (Section 881 reaches property in hands of third parties). The record in this case clearly establishes probable cause to believe that the Property was traceable to Baldwin's drug proceeds. Agent Georges, the Drug Enforcement Agency officer in charge of the Baldwin investigation, testified that Baldwin's co-conspirators stated Baldwin told them he purchased the Property with proceeds of his drug sales, and one of them, Jack Moncrief, stated that Baldwin told him he had formed fictitious corporations to hide his assets. Georges also testified that a salesman at Southport Realty told him Baldwin was the one who discussed purchase of the Property with her, indicating that title would be placed in Heidi's name, and that $75,000.00 in cash had been tendered for the Property. Finally, Georges testified that Hartline admitted Baldwin established Heidi, using Hartline as a figurehead, that the corporate kit for Heidi was found on Baldwin's bedside table during a search of the Property, and that Baldwin attempted to have Hartline sign over her interest in Heidi to him, but the documents were intercepted by the DEA.[2]

Clearly, the common sense view of Georges' testimony and the other evidence in the record, including Baldwin's admission that he delivered $75,000.00 for purchase of the Property, leads inevitably to the conclusion reached by the district court: that reasonable grounds existed to believe the Property was purchased with profits from Baldwin's illegal drug sales and that, in fact, Baldwin was the beneficial owner of the Property.[3]

**B. Failure to Establish Innocent Ownership**

Once the government demonstrates that probable cause exists, the burden of proof in a civil forfeiture proceeding shifts to the claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture. *$4,255,625.39*, 762 F.2d at 904. Heidi could meet this burden either by rebutting the Government's evidence that the Property was proceeds of illegal drug activities or by showing that it was an innocent owner who did not know of the Property's connection with drug sales. *See id.* at 904, 906. Heidi clearly did neither. In fact, although Heidi bore the burden of proof at the hearing, it did not call any witnesses, contenting itself instead with cross-examination of the rebuttal witnesses presented by the Government.[4] When a claimant presents no evi-

---

2. Although most of Georges' testimony was hearsay, hearsay testimony may be used to establish probable cause. *Bush v. United States*, 389 F.2d 485, 489 (5th Cir.1968).

3. During oral argument, Heidi's counsel also argued that the Government failed to establish probable cause because "most" of Baldwin's drug transactions occurred after the Property was purchased. Section 881(a)(6) only requires that the government show probable cause that there is a substantial connection between the property and illegal drug transactions; it does not require a showing of a relationship between the property and a particular drug transaction. *$4,255,625.39*, 762 F.2d at 904. As discussed above, there was ample evidence of a substantial connection in this case.

4. One of the Government's witnesses was Georges, who read Baldwin's deposition into the record. In that deposition, for which Baldwin appeared individually and as the designated corporate representative for Heidi pursuant to Fed.R.Civ.P. 30(b)(6), Baldwin claimed the Fifth Amendment privilege both individually and (improperly) on behalf of Heidi with regard to all questions asked. *See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 55, 94 S.Ct. 1494, 1514, 39 L.Ed.2d (1974) (organizations have no privilege against self-incrimination). The district court drew a permissible inference from this failure to testify that Baldwin's testimony would not have been favorable to the claim. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976) (prevailing rule is that Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them).

dence to contradict the government's evidence of probable cause, the scope of review on appeal is whether the government's evidence established probable cause. *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980). As discussed above, probable cause was established by overwhelming evidence in this case.

■ Further, even if Heidi's argument were properly before us, it is totally lacking in merit. Once again Heidi relies on its legal title to the Property and the lack of evidence that Heidi, as a separate entity, was involved in drug trafficking. As discussed above, legal title to property in an entity other than the drug trafficker does not of itself insulate that property from the reach of Section 881(a)(6). *$4,255,625.39,* 762 F.2d at 905. In fact, possession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 604 F.2d 27, 28 (8th Cir. 1979), *cert. denied sub nom. Stumpff v. United States,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982); *accord, United States v. One 1977 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294 (S.D. Fla.1985). As the court explained in *One Racer:*

> The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking.... In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.

> . . . . .

> In short, courts look behind the formal title to determine whether the record title owner is a "strawman" set up to conceal the financial affairs or illegal dealings of someone else.

624 F.Supp. at 294–95. The record clearly supports the district court's determination that Heidi was such a "strawman" in this case.

**C. Constitutional Challenges**

**1. Vagueness Challenge**

Heidi asserts that the phrase "all proceeds traceable to" as used in Section 881(a)(6) makes that Section so vague that it is void, both as applied to Heidi and on its face. We find that Section 881(a)(6) clearly was not vague as applied to Heidi and that Heidi has no standing to make a facial challenge to that Section.

■ A law is impermissibly vague if it does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly" or does not provide sufficiently explicit standards for those who will apply it, thereby encouraging "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). A facial challenge to a law is a claim that the law is "invalid *in toto* —and therefore incapable of any valid application." *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362, *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982) (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974)). If the enactment does not implicate constitutionally-protected conduct, then a facial challenge may be upheld only if the statute is impermissibly vague in all its applications, including its application to the plaintiff. *Id.* at 495, 102 S.Ct. at 1191 (one whose conduct clearly is covered by a statute cannot complain of vagueness in the law as applied to others); *accord, United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) (when First Amendment freedoms are not implicated, challenge must be examined in light of facts of case at hand).

■ Heidi, therefore, must establish that Section 881(a)(6) was vague as applied to it in order to have standing to make a facial challenge to the statute. The ques-

tion is whether a person of ordinary intelligence in Heidi's position would have been unfairly surprised by application of Section 881 to him and whether application of that Section to Heidi was an instance of arbitrary and discriminatory enforcement.

Section 881(a)(6) provides that:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, *all proceeds traceable to such an exchange,* and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C.A. § 881(a)(6) (1981) (emphasis added).

Looking at this language, would a person of ordinary intelligence be surprised to find that property to which it held legal title could be subject to forfeiture under this statute even though that person did not engage in drug trafficking? Clearly not. By its own terms, the statute indicates that the only time property traceable to drug proceeds is not subject to forfeiture is when the owner of the property establishes that the act connecting the property with a drug transaction was done without the owner's knowledge or consent. *Cf. $4,255,-625.39*, 762 F.2d at 905 (inclusion of innocent owner defense in statute indicates that it is not limited to property in hands of drug traffickers). Further, would that person think that when the property was paid for by a drug trafficker it would not constitute proceeds traceable to a drug transaction? Again, the answer is clear. When the punishment imposed by a statute is for

"an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945).

■ Finally, did a lack of sufficiently explicit standards render application of this statute to Heidi an instance of arbitrary and discriminatory enforcement? The only possible answer on the facts of this case is "no." The purpose of Section 881(a)(6) is to deter drug smuggling by depriving drug traffickers of the fruits of their labors— money and property acquired with drug proceeds. *United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway,* 612 F.Supp. 1492, 1496 (S.D. Fla.1985). As discussed above, the language "all proceeds traceable to" has been interpreted to include a requirement that the property have a substantial connection to illegal drug trafficking. *$4,255,625.39,* 762 F.2d at 903. This limiting construction by the courts must be considered in deciding whether the statutory language is impermissibly vague. *Hoffman Estates,* 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5.

■ Review of the record shows that this case falls squarely within both the purpose and the requirements of Section 881(a)(6). The Property was proceeds of Baldwin's illegal drug sales. Therefore, forfeiture of the Property was not an instance of arbitrary or discriminatory enforcement of Section 881. Because Section 881(a)(6) was not impermissibly vague in its application to Heidi, Heidi has no standing to bring a facial challenge to that statute.

**2. Procedural Due Process Challenge**

■ Finally, Heidi argues that Section 881(a)(6) does not meet the requirement of *Fuentes v. Shevin* that seizure of property without a prior hearing be made only when "the person initiating the seizure [is] a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and

justified in the particular instance." 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556, *reh'g denied*, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). Under Section 881, a seizure is initiated by the filing of a verified complaint alleging probable cause to believe that the property is subject to seizure. 21 U.S.C.A. § 881(b) & Supp.Rule C(2), Fed.R.Civ.P. Upon filing this complaint, the clerk of court issues a warrant for arrest of the property. Supp.Rule C(3). There is no requirement of detailed allegations and there is no provision for judicial review before the warrant is issued. It is beyond dispute, however, that due process is satisfied by this procedure. The United States Supreme Court has held that seizure for purposes of forfeiture presents an extraordinary situation justifying postponement of notice and hearing. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–91, 40 L.Ed.2d 452, *reh'g denied*, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). Under *Calero-Toledo*, it is well settled that no prior judicial determination that seizure is justified is required when the government seizes items subject to forfeiture. *United States v. $8,850.00 in United States Currency*, 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983). Therefore, Heidi's argument that Section 881 denies procedural due process because it allows a government agent to make the initial determination to seize property is without merit.[5]

### III. CONCLUSION

 This appeal is patently frivolous. Heidi has relied on an argument to recover the Property that is insufficient even to give it standing to challenge the forfeiture, challenged as vague a statute that clearly covers its situation and argued that it was denied due process in the face of decisive Supreme Court authority to the contrary. The applicable law and the facts are clear. Although we normally are reluctant to im-

pose sanctions, clearly frivolous claims such as those raised in this appeal waste judicial resources as well as those of the appellee. Therefore, pursuant to Fed.R. App.P. 38, we award to appellee double costs and reasonable attorney's fees incurred by reason of this appeal to be paid by appellant Heidi. Further, if it is determined upon remand of this case that Heidi's attorneys are culpable under 28 U.S.C.A. § 1927 for having unreasonably and vexatiously multiplied the proceedings in this case, then they should be held personally liable for the above costs and fees as well, to the extent allowed by law.

AFFIRMED and SANCTIONS IMPOSED. This case is REMANDED for the district court to assess the amount of appellee's reasonable attorney's fees in connection with this appeal and for a determination of whether, and to what extent, Heidi's attorneys should be held personally liable for reasonable attorney's fees and costs.

---

5. In fact, it appears that a magistrate did make a probable cause determination on the basis of an affidavit by Georges before the warrant was issued in this case. Therefore,

Heidi actually received more procedural safeguard of its rights than was constitutionally required.