UNITED STATES of America, Plaintiff,

v.

**CERTAIN REAL PROPERTY LOCATED AT RIVER ROAD, ELIOT, YORK COUNTY, MAINE, with all appurtenances and improvements thereon and more particularly described in a deed from Gerard R. Gravel to Dana B. Snodgrass, dated September 15, 1989, and recorded in the York County Registry of Deeds at Book 5185, Page 343, Defendant.**

Civ. No. 93–26–P–C.

United States District Court,
D. Maine.

Nov. 10, 1993.

Jonathan A. Toof, Asst. U.S. Atty., Portland, ME, for plaintiff.

Thomas Van Houten, Sanford, ME, for claimant Dana B. Snodgrass.

Michael S. Haenn, Bangor, ME, James B. Dodd, Columbia, SC for claimant Federal National Mtge. Assoc.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

### I.

This is a civil forfeiture action by the Government as Plaintiff against the Defendant property pursuant to 21 U.S.C. § 881(a)(7). The case was made ready for jury trial and, after jury selection, the Government suggested, for the first time, that the Court hear evidence on the question of the standing of the claimant, Dana Snodgrass, Jr., to assert a claim of ownership to the Defendant property and requested that the Court resolve that issue as one committed to threshold determination by the Court, sitting without jury. *See United States v. Real Property at 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir. 1991). With the agreement of both counsel, the Court held an evidentiary hearing on November 9, 1993, at which evidence was taken on the standing issue and the claimant's defense that the action was precluded by the bar of the statute of limitations. The Court *CONCLUDES* that the said claimant is without standing to assert his claim of ownership. The Court need not consider claimant's statute-of-limitations defense.

### II.

Officers of the local law enforcement community in and around Eliot, Maine began to receive, in 1983, information that substantial drug trafficking activity was being carried on by Dana Snodgrass, Sr., on the Defendant property. Snodgrass, Sr., was known to be the owner of the Defendant property. On May 6, 1992, Officer Raymond Gagner, a BIDE drug enforcement officer, went to the

Defendant property to serve a grand jury subpoena on a prospective witness. While there, he met Snodgrass, Sr., whom he knew, and told him that he was being investigated for drug trafficking, which was true, and that he, Gagner, would like to talk with him about it. Snodgrass, Sr., replied that he would like to do that but could not do so without his lawyer. He never made any subsequent attempt to contact Gagner.

The investigation of Snodgrass, Sr., continued. He was arrested on January 5, 1993, charged, and convicted of participation in a cocaine trafficking conspiracy and subscribing a false federal income tax return. He was sentenced on September 20, 1993, to eighty-three-month and sixteen-month concurrent terms of incarceration, which he is now serving.

After his conversation with Gagner on May 6, 1992, Snodgrass, Sr., conveyed, in August of that year, the Defendant property and another parcel of property to his son, Dana Snodgrass, Jr., the claimant herein, who had then just turned twenty-one years of age. This was done by a quit claim deed conveying a fee simple absolute to Snodgrass, Jr. Claimant's Exhibit D-1. The deed is dated August 17, 1992, and reserves no proprietary or beneficial interest in the premises to Snodgrass, Sr. The deed was ultimately recorded in the York County Registry of Deeds at Book 6214, Page 222, on August 19, 1992, at 9:59 a.m.

Snodgrass, Jr., now asserts a claim of ownership to the Defendant property based on the deed from his father and seeks to defeat the forfeiture of the property to the Government by relying on the "innocence defense"; that is, that he had no knowledge of and gave no consent to the drug trafficking activities of his father on the property. The Government objects to this claim, claiming that the transaction of conveyance was a sham intended to illegally evade the forfeiture law, and that it is not effective to convey anything other than a nominal title to Snodgrass, Jr. *United States v. A Single Family Residence,* 803 F.2d 625, 630 (11th Cir.1986).

Snodgrass, Sr., testified that he made the transfer because he did not have a will and wanted to be sure his son would inherit the property upon his death. Snodgrass, Jr., a callow youth beset by a near-total lack of memory on any subject[1] except, the Court believes, on what his father has told him to say, struggled manfully at the hearing to support his father's assertion. The two of them testified to a telephone conversation in which Snodgrass, Sr., told his son what he proposed to do. No discussion, they say, was had of Senior's drug trafficking activities. Senior said that he would convey the title to the property to Junior but continue to live on it, as in the past, maintaining the property and paying all expenses generated by it during his lifetime. Junior agreed, he says, to those terms.

The entire transaction is a facially transparent sham, which the Court *FINDS* was concocted by Snodgrass, Sr., to evade the onus of the forfeiture law as he felt the noose drawing close about him and his property as a result of the investigation of his drug trafficking enterprise. His testimony that he transferred the property to secure its inheritance by his son is facially incredible, not least of all because he had had no relationship of substance for seventeen years with Snodgrass, Jr.

Snodgrass, Sr., and his wife divorced when Junior was near an infant, and former wife and infant departed to Seattle, Washington, where Junior remained and, in fact, lives today. Snodgrass, Sr., saw his son only twice during that seventeen-year period, in 1992 and around 1987 when Junior came east for short stays of not more than ten days. He made only the most modest contributions to Junior's support and welfare, consisting principally of occasional Christmas presents and gifts of fifty or sixty dollars once Junior embarked upon his college studies. They claim to have talked on the telephone at least twice a year.

The Court *FINDS* that the entire transaction involving the conveyance of the Defendant property from Snodgrass, Sr., to Snodgrass, Jr., was driven by Snodgrass, Sr.'s,

---

1. Snodgrass, Sr., displays an equally convenient lack of memory about the operative conversa-

tions between himself and both Gagner and Snodgrass, Jr.

fears generated initially by his conversation of May 6, 1992, with Officer Gagner and whatever demons pursued him thereafter because of his drug trafficking activities and his knowledge of the ongoing investigation. The transaction was intended by Snodgrass, Sr., *solely* to shield the property in a fraudulent manner from forfeiture because of those activities and was not intended to convey any right of dominion or control over, or even any beneficial interest in, the Defendant property. It was not, in fact, effective in the present context to convey more than a nominal, voidable title. The retention of Snodgrass, Sr., of all rights to the occupancy and use of the property and the obligation to tend to and fund its upkeep and maintenance fully limns the illusory, fraudulent character of the paper transaction intended for the public record. The fact that this part of the transaction was not reflected in any way in the deed of conveyance, which would be spread upon the public record, is further proof of Snodgrass, Sr.'s, dark fears and clandestine schemes rather than of any benign, familial beneficence.

The claimant, Snodgrass, Jr., has failed to show any substantial ownership interest in the Defendant property sufficient to vest in him a beneficial interest in or right to exercise dominion or control over the Defendant property. He is without standing to make a claim of ownership in contravention of the Government's claim of forfeiture. *United States v. One Parcel of Land*, 902 F.2d 1443 (9th Cir.1990); *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1439–40 (11th Cir.1984); *A Single Family Residence*, 803 F.2d at 630; *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 604 F.2d 27, 28–29 (8th Cir.1979).

Accordingly, it is hereby *ORDERED* that the claim of claimant, Dana Snodgrass, Jr., be, and it is hereby, *DISMISSED* for lack of standing to make any claim of ownership to the Defendant property. Judgment for Plaintiff to *ENTER* forthwith as to such claim.